# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARY C. FONTAINE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 12 C 8738 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| METROPOLITAN LIFE INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION & ORDER

On March 27, 2014, the court granted Mary Fontaine's motion for entry of judgment, finding that she qualified as disabled under two Metropolitan Life Insurance Company policies and that she was therefore entitled to benefit payments under those policies. The court denied Fontaine's request for attorneys' fees, however, finding that MetLife was "substantially justified" in denying her claim. Fontaine now moves for reconsideration of the court's order insofar as it denied her attorneys' fees. For the reasons stated below, Fontaine's motion is granted.

### I. BACKGROUND

The facts of this case are set forth in the court's order dated March 27, 2014. *See Fontaine v. Metro. Life Ins. Co.*, No. 12 C 8738, 2014 WL 1258353, at *16 (N.D. Ill. Mar. 27, 2014). Fontaine was a partner at the law firm of Mayer Brown in Chicago, where she practiced in the firm's structured finance group for thirty years. In 1997, she began having problems with her vision. She was diagnosed with myopic macular degeneration, a condition that results in a loss of vision in the center of the visual field. After her eyesight deteriorated over the course of several years, Fontaine finally decided in 2011 that her vision had become so impaired that she

could no longer do her job. She filed a claim for disability benefits with MetLife, but MetLife denied her claim, finding that she was not disabled under the policies.

On March 27, 2014, the court granted Fontaine's motion for entry of judgment, finding that Fontaine had shown that her disability left her unable to perform any of her material job duties as a structured finance partner. In granting Fontaine's motion, the court noted several aspects of MetLife's denial that it found troubling, including MetLife's continued reliance on two nontreating reviewing physicians (Drs. Nelson and Hauser) who went beyond their areas of expertise in suggesting that "anxiety" or "burn out" contributed to Fontaine's "insecurity" in her job and that Fontaine's past job performance meant that she had the present ability to do her job. Nevertheless, the court denied Fontaine's request for attorneys' fees, finding that MetLife's position was "substantially justified" because it was "not . . . entirely frivolous." *Id.* at *16.

## II. LEGAL STANDARD

A court may grant a motion for reconsideration if the movant "points to evidence in the record that clearly establishes a manifest error of law or fact." *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996). The parties may not introduce evidence previously available but unused in the prior proceeding or tender new legal theories. *Id.* The Seventh Circuit has explained that a "manifest error" occurs when "the [c]ourt has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the [c]ourt by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990); *see also Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (describing "manifest error" as a "wholesale disregard, misapplication, or failure to recognize controlling precedent").

III. ANALYSIS

Fontaine argues that the court should reconsider its decision to deny attorneys' fees because that denial relied on a misunderstanding of the substantial justification test as articulated by the Seventh Circuit in *Production & Maintenance Employees' Local 504, Laborers' Int'l Union v. Roadmaster Corp.*, 954 F.2d 1397, 1404 (7th Cir. 1992). In *Roadmaster*, the court explained that "[e]ven if not frivolous, a party's position still may not be substantially justified; substantial justification means 'more than merely not frivolous, but less than meritorious.'" *Id.* (quoting *Bittner v. Sadoff & Rudoy Indus.*, 728 F.2d 820, 830 (7th Cir. 1984)). Fontaine contends that by denying fees because MetLife's position was "not entirely frivolous," the court applied a standard that was overly lenient to MetLife. Under a correct application of the standard, she claims, the court should have awarded her attorneys' fees.

The court agrees with Fontaine that, by equating a substantially justified position with a nonfrivolous position, the court misapplied the substantial justification test to this case. As *Roadmaster* and subsequent decisions make clear, "substantial justification means *more* than merely not frivolous . . . ." 954 F.2d at 1404 (emphasis added) (internal quotation marks omitted); *see also Herman v. Cent. States, S.E. and S.W. Areas Pension Fund,* 423 F.3d 684, 696 (7th Cir. 2005) (defining "substantially justified" as "something more than non-frivolous, but something less than meritorious"). The court's error constitutes a "misapplication" of controlling precedent, thus entitling Fontaine to reconsideration of the fees issue. *See Oto*, 224 F.3d at 606,

The court therefore considers the attorneys' fees issue anew. As the court noted in its previous order, the Supreme Court last addressed the issue of attorneys' fees in ERISA cases in *Hardt v. Reliance Standard Life Insurance Co.*, 560 U.S. 242, 254 (2010). In *Hardt*, the district

3

court had found that the plan administrator's decision to deny disability benefits was not based on substantial evidence. *Hardt*, 560 U.S. at 248. The court criticized the plan administrator's reliance on a reviewing physician's report that was incomplete, the "extremely vague and conclusory" basis for the reviewing physician's medical conclusions, and the reviewing physician's failure to cite medical evidence in support of his conclusions and address a treating physician's contrary medical findings. *Id.* The court also found that the plan administrator had improperly rejected much of the evidence the plaintiff had submitted. *Id.* The court remanded the case to the plan administrator to reassess the plaintiff's claims. *Id.*

The plaintiff then moved for attorneys' fees. In deciding whether to award fees, the district court first considered whether the plaintiff was a "prevailing party"—a necessary condition to awarding fees under Fourth Circuit precedent. *Id.* at 249. Because the court's remand order "sanctioned a material change in the legal relationship of the parties," the court concluded that the plaintiff was a prevailing party. *Id.* The court next considered five factors to determine whether an award of attorneys' fees was appropriate: "(1) the degree of opposing parties' culpability or bad faith; (2) ability of opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions." *Id.* at 249 n.1 (internal quotation marks omitted). The court concluded that an award of attorneys' fees award was appropriate under the five-factor test. *Id.* at 250.

The Fourth Circuit vacated the district court's order awarding fees, finding that because the remand order "did not require [the plan administrator] to award benefits to [the plaintiff]," it

4

did not constitute an "enforceable judgment on the merits," thus precluding the plaintiff from establishing prevailing-party status. *Id.* (internal quotation marks omitted). The Supreme Court in turn reversed the Fourth Circuit, holding that "a court in its discretion may award fees and costs to either party . . . as long as the fee claimant has achieved 'some degree of success on the merits.'" *Id.* at 245 (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)). The Court further held that the plaintiff had achieved some degree of success on the merits and that the district court had properly exercised its discretion to award fees. *Id.* at 256.

Here, it is undisputed that Fontaine achieved "some degree of success on the merits." Indeed, Fontaine achieved all that she could have achieved in this court—obtaining not merely a remand order but a final judgment entitling her to benefits. There is no question that the court may in its discretion award attorneys' fees under *Hardt*. The question is whether the court *should* exercise its discretion to do so.

The court's discretion in deciding this question "is not unlimited." *Id.* at 256. Following *Hardt*, the Seventh Circuit has maintained that two tests should guide a court's discretion in analyzing whether attorneys' fees should be awarded to a party in an ERISA case. *Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis., Inc.*, 657 F.3d 496, 506 (7th Cir. 2011). The first test is the same five-factor test that the Fourth Circuit had adopted in *Hardt*. *Id.* at 505-06 (citing *Quinn v. Blue Cross & Blue Shield Ass'n*, 161 F.3d 472, 478 (7th Cir. 1998)). The second test "'looks to whether or not the losing party's position was 'substantially justified.''" *Id.* at 506 (quoting *Quinn*, 161 F.3d at 478). "[B]oth tests essentially ask the same question: 'was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?'" *Id.* (quoting *Quinn*, 161 F.3d at 478).

*Holmstrom v. Metropolitan Life Insurance Co.*, 615 F.3d 758 (7th Cir. 2010) illustrates how courts have applied these two tests in similar contexts. In *Holmstrom*, the Seventh Circuit held that MetLife acted arbitrarily and capriciously in denying benefits to a senior training specialist at a large credit-management company who suffered from a painful nerve condition in her right arm. *Id.* at 761. Although the plaintiff did not have "objectively measureable symptoms," the court found that MetLife's denial was nevertheless arbitrary and capricious because there was "ample corroboration that [the plaintiff's] pain ha[d] been genuinely disabling." *Id.* In reaching that conclusion, the court relied heavily on the fact that the Social Security Administration found the plaintiff totally disabled under a standard that was more stringent than the standard under the plaintiff's insurance policy. *Id.* at 763, 772. The court criticized MetLife for "ignor[ing] the key final recommendation of one of [its own] doctors," and it noted that MetLife's reviewer's suspicion of malingering was "speculation" that was "not a substitute for evidence." *Id.* at 775.

On remand, the district court awarded attorneys' fees to the plaintiff. *Holmstrom v. Metro. Life Ins., Co.*, No. 07-CV-6044, 2011 WL 2149353, at *3 (N.D. Ill. May 31, 2011). In applying the five-factor test, the district court noted that the first factor—the degree of culpability or bad faith of the offending party— "b[ore] little on the issue," acknowledging that MetLife had not acted in bad faith. *Id.* The court also found that the fourth factor—the benefit to other members of the pension plan—was "largely irrelevant." *Id.* The court found that the other three factors weighed in favor of the plaintiff, recognizing that (i) MetLife had the ability to pay an award; (ii) an award would likely deter others acting under similar circumstances; and (iii) the plaintiff's claims had more "relative merit" because MetLife had acted arbitrarily and

capriciously. *Id.* The district court concluded that the plaintiff was entitled to fees "without question." *Id.*

There are many similarities between this case and *Holmstrom*. As in *Holmstrom*, MetLife has failed to adequately explain why it disagreed with the Social Security Administration's determination that Fontaine was disabled under a far more stringent definition of disability. MetLife ignored key findings of one of its own doctors, Dr. Eliott, who concluded that "over time [Fontaine] likely developed some reduction in reading speed [which] may impact her job performance due to the high visual need required for her job." *Fontaine*, 2014 WL 1258353, at *9. And many of MetLife's arguments "lack[ed] substance and reflect[ed] arbitrary action," *Holmstrom*, 615 F.3d at 771, such as its argument that Fontaine was able to do her job because she had good visual acuity, when Fontaine never suggested that she was unable to do her job for this reason.

Indeed, there are several reasons why Fontaine has a stronger claim to attorneys' fees than the plaintiff in *Holmstrom*. While the court in *Holmstrom* found that MetLife's degree of culpability or bad faith was slight, here the court has already criticized MetLife for (i) relying on a nontreating physician's conclusion that Fontaine was suffering from "anxiety" or "burn out" when the physician had no expertise in psychiatry, *Fontaine*, 2014 WL 1258353, at *14; (ii) relying on a nontreating physician's conclusion about what Fontaine's past job performance suggested about her present ability to do her job when the physician had no special training qualifying him to opine on that subject, *id.*; and (iii) failing to appreciate the demands of Fontaine's job responsibilities as a structured finance partner, *id.* at *16. In these respects, MetLife failed to treat Fontaine's claim with due seriousness, allowing unfounded speculation to substitute for reliable evidence. The court thus concludes that the first factor—the degree of

7

culpability or bad faith of the offending party—favors Fontaine. *See also Anderson v. Hartford Life & Accident Ins.*, 772 F. Supp. 2d 1025, 1027 (S.D. Ind. 2011) (finding that the first factor weighed in favor of the plaintiff where the plan administrator's reviewing physicians "unreasonably discounted the [p]laintiff's subjective complaints of pain and the resulting limitation on her activities," which was erroneous "especially given that none of the [d]efendant's physicians ever examined the [p]laintiff").

The second factor also favors Fontaine, as MetLife has the ability to pay an attorneys' fees award. So too the third factor, as an award of attorneys' fees will deter other plan administrators from acting as MetLife did. Unlike Fontaine, many claimants will lack the financial resources to hire a lawyer and challenge a denial of benefits in federal court. Where an administrator acts unreasonably by basing its denial of benefits on the opinions of reviewing physicians that are wholly outside their areas of expertise, it is important to award attorneys' fees. Otherwise, the administrator has little reason to award benefits until reversed by a federal court.

As in *Holmstrom*, the fourth factor, the benefit to other members of the pension plan, is "largely irrelevant in an individual dispute such as the instant case, although MetLife may be more likely to take into account the Social Security Administration's decisions to award benefits after the instant case." *Holmstrom*, 2011 WL 2149353, at *3. Finally, the fifth factor weighs in favor of Fontaine, who achieved all that she could have in this court.

The court thus concludes that a fee award is appropriate under the five-factor test. For the same reasons, the court finds that MetLife's position was not "substantially justified." *See Anderson*, 772 F. Supp. 2d at 1027 (finding that plan administrator's position was not "substantially justified" for the same reasons that were relevant to the five-factor analysis);

8

*Kolbe & Kolbe Health & Welfare Benefit Plan*, 657 F.3d at 506 (noting that "both tests essentially ask the same question"). Accordingly, the court awards Fontaine her reasonable attorneys' fees.

## IV. CONCLUSION

Fontaine's motion for reconsideration of the court's decision to deny attorneys' fees is granted. The court awards reasonable attorneys' fees to Fontaine. The parties are to engage in the process contemplated by Local Rule 54.3 to see if an agreement on the amount of fees can be reached.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: June 3, 2014