CERTIFIED COPY

A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 14-1984

MARY C. FONTAINE,

*Plaintiff-Appellee*,

*v.*

METROPOLITAN LIFE INSURANCE COMPANY,

*Defendant-Appellant*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:12-cv-08738 — **Joan B. Gottschall**, *Judge*.

———————————

ARGUED DECEMBER 1, 2014 — DECIDED SEPTEMBER 4, 2015

———————————

Before BAUER, KANNE, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. In 1989, the Supreme Court held that courts should apply *de novo* review in suits challenging denials of employee benefits governed by the Employee Retirement Income Security Act of 1974, better known as ERISA. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); see 29 U.S.C. § 1132(a)(1). But there was a catch. If the benefit plan provided expressly for a different, more deferential standard of review, *Firestone* said, that specific provi-

sion would control over the default rule of *de novo* review. 489 U.S. at 115. Insurance companies and plan sponsors began including such provisions in most employee benefit plans, typically saying the insurer or plan administrator would exercise discretionary judgment in interpreting a plan or deciding whether to pay benefits. Courts would then apply a deferential standard of review under which a denial would stand unless it was "arbitrary and capricious." See, e.g., *Black v. Long Term Disability Ins.*, 582 F.3d 738, 743–44 (7th Cir. 2009).

A further round in the tug-of-war over employee benefits has been adoption of state laws intended to protect employees and plan beneficiaries from abuse of such discretion. In this case, we address a federal preemption challenge to such an Illinois insurance law, one that prohibits provisions "purporting to reserve discretion" to insurers to interpret health and disability insurance policies. Like our colleagues in the Ninth and Sixth Circuits, as well as the district court in this case, we reject the preemption challenge and apply the state law. See *Standard Ins. Co. v. Morrison*, 584 F.3d 837 (9th Cir. 2009); *American Council of Life Insurers v. Ross*, 558 F.3d 600 (6th Cir. 2009); *Fontaine v. Metropolitan Life Ins. Co.*, 2014 WL 1258353, *11–12 (N.D. Ill. March 27, 2014). We therefore affirm the district court's judgment in favor of plaintiff Mary C. Fontaine.

I.  *Factual & Procedural Background*

Plaintiff Fontaine was an equity partner in the structured finance group of the law firm of Mayer Brown LLP. Mayer Brown offered Fontaine long-term disability insurance through the Metropolitan Life Insurance Company (MetLife), and Fontaine paid the premium for that policy. In 2011,

Fontaine retired after 30 years of practice at Mayer Brown. She said vision problems prevented her from continuing to perform at the high level and pace expected in her work as a structured finance attorney. Two days after retiring, Fontaine filed a claim for disability benefits with MetLife.

MetLife denied her claim, finding that Fontaine did not fit the definition of disabled in her insurance policy. MetLife affirmed that initial denial in an internal administrative appeal. Fontaine then filed this suit against MetLife under ERISA for wrongful denial of benefits.

Fontaine and MetLife each moved for entry of judgment by the district court pursuant to Federal Rule of Civil Procedure 52(a). This procedure is essentially a trial on the papers, see *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001), and is well-suited to ERISA cases in which the court reviews a closed record. Both sides presented extensive medical evidence, which the district court examined in detail. See *Fontaine*, 2014 WL 1258353, at *2–10.

The standard of review is the pivotal issue. Fontaine's disability plan provides that MetLife's benefit determinations "shall be given full force and effect" unless they are shown to be "arbitrary and capricious," thus calling for deferential review. An Illinois insurance regulation known as § 2001.3, however, prohibits such terms in health and disability insurance policies. Here is its full text:

> No policy, contract, certificate, endorsement, rider application or agreement offered or issued in this State, by a health carrier, to provide, deliver, arrange for, pay for or reimburse any of the costs of health care services or of a

> disability may contain a provision purporting to reserve discretion to the health carrier to interpret the terms of the contract, or to provide standards of interpretation or review that are inconsistent with the laws of this State.

50 Ill. Admin. Code § 2001.3. The district court held that § 2001.3 applied so that the court decided Fontaine's eligibility for benefits *de novo*. The court found that Fontaine had proven by a preponderance of the evidence that she was disabled and entitled to benefits.

MetLife appeals. MetLife does not challenge the district court's findings under the *de novo* review standard, but MetLife argues that § 2001.3 is preempted by ERISA and that the denial of benefits was not arbitrary and capricious. Fontaine contends that § 2001.3 is not preempted and that even if it were, the denial of benefits was still arbitrary and capricious. We affirm, concluding that § 2001.3 applies and is not preempted. In Part II we address the preemption issue, which is the heart of this appeal. In Part III, we briefly address MetLife's arguments that § 2001.3 should not apply by its terms. We do not reach Fontaine's alternate ground for affirmance, whether the denial of benefits was arbitrary and capricious.

II. *ERISA Preemption*

ERISA authorizes participants in and beneficiaries of employee benefit plans like Fontaine to sue to recover benefits due under the terms of those plans. 29 U.S.C. § 1132(a)(1)(B). It is well established that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or

fiduciary discretionary authority." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Like so many other plans in the wake of *Firestone*, Fontaine's benefit plan gives MetLife discretionary authority when making benefit determinations.

Section 2001.3 of the Illinois insurance regulations prohibits discretionary clauses like the one in Fontaine's disability policy. See 50 Ill. Admin. Code § 2001.3. (Fontaine's disability policy was issued in Illinois.) The proper standard of judicial review for MetLife's benefit denial depends on whether ERISA preempts § 2001.3.

ERISA deals expressly with the issue of preemption of state law. It first preempts state laws that "relate to any employee benefit plan," 29 U.S.C. § 1144(a), but then saves from preemption any state law "which regulates insurance," 29 U.S.C. § 1144(b)(2)(A). Fontaine and MetLife agree that § 2001.3 is a state law that relates to an employee benefit plan. They disagree on whether § 2001.3 is a state law that "regulates insurance." They also disagree on whether it conflicts with ERISA's civil enforcement scheme. We agree with the district court and Fontaine, and with our colleagues in the Ninth and Sixth Circuits, which have both held that such state laws prohibiting discretionary clauses in insurance contracts are not preempted by ERISA. *Standard Ins. Co. v. Morrison*, 584 F.3d 837 (9th Cir. 2009); *American Council of Life Insurers v. Ross*, 558 F.3d 600 (6th Cir. 2009).

A.  *ERISA & State Insurance Regulation*

To be deemed a law that "regulates insurance" and thus to avoid preemption, a state law must satisfy two requirements. "First, the state law must be specifically directed to-

ward entities engaged in insurance. … Second, … the state law must substantially affect the risk pooling arrangement between the insurer and the insured." *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 342 (2003). Section 2001.3 meets both requirements.

     1. *"Directed Toward Entities Engaged In Insurance"*

Section 2001.3 is "specifically directed toward entities engaged in insurance," *id.*, because it is "grounded in policy concerns specific to the insurance industry," *UNUM Life Ins. Co. v. Ward*, 526 U.S. 358, 372 (1999). It regulates, indeed prohibits, discretionary clauses in health and disability insurance policies, so it regulates insurers "with respect to their insurance practices." *Miller*, 538 U.S. at 334, quoting *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 366 (2002).

MetLife argues that § 2001.3 is not specifically directed toward entities engaged in insurance because it prohibits a plan sponsor, like Mayer Brown, from delegating discretionary authority to the insurer of an employee benefit plan. The argument is too clever, and without merit. While Mayer Brown is not an insurer and is nevertheless affected by § 2001.3, that does not mean that § 2001.3 is not specifically directed toward entities engaged in insurance. The Supreme Court rejected essentially the same too-clever argument in *Miller*: "Regulations 'directed toward' certain entities will almost always disable other entities from doing, with the regulated entities, what the regulations forbid; this does not suffice to place such regulation outside the scope of ERISA's saving clause." 538 U.S. at 335–36 (footnote omitted).

In *Miller* the Supreme Court considered "any-willing-provider" laws, which require health maintenance organiza-

tions to include in their networks any health care providers within their coverage areas who are willing to meet their terms and conditions. Such laws "equally prevent *providers* from entering into limited network contracts with *insurers*, just as they prevent insurers from creating exclusive networks in the first place." *Id.* at 334 (emphasis in original). The fact that the laws also affected health care providers did not stop the Supreme Court from holding that such laws are specifically directed toward entities engaged in insurance and are thus saved from preemption under ERISA as state insurance regulations. Prohibitions on discretionary clauses, like any-willing-provider laws, have similarly inevitable effects on "entities outside the insurance industry." Just as in *Miller*, that does not change their character as insurance regulations. See *id.* at 335.

In another too-clever argument, MetLife asserts that the discretionary clause in this case is not actually in an insurance policy but in an ERISA plan document. From this premise, MetLife reasons that if § 2001.3 prohibits discretionary clauses in ERISA plan documents as distinct from insurance policies, then the law's effect on plan sponsors is not incidental and thus the law is not specifically directed toward entities engaged in insurance. In *Ward*, the Supreme Court rejected a similarly hyper-technical argument aimed at defeating the ERISA compromise on preemption. Whether a provision for discretionary interpretation is placed in an insurance policy or in a different document is arbitrary and should make no legal difference. If MetLife's interpretation of ERISA's saving clause were correct, then states "would be powerless to alter the terms of the insurance relationship in ERISA plans; insurers could displace any state regulation simply by inserting a contrary term in plan documents. This

interpretation would virtually 'read the saving clause out of ERISA.'" *Ward*, 526 U.S. at 376, quoting *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 741 (1985).

On MetLife's reasoning, a plan sponsor could delegate authority to an insurer to refuse to comply with a state insurance regulation mandating, say, coverage of ovarian cancer screenings, so long as it did so by delegating that discretionary authority in an ERISA plan document rather than in the insurance policy itself. See Brief of Amicus Curiae AARP at 5. MetLife replies to this hypothetical in two ways: first, by noting that mandating coverage for a medical procedure falls within a state's power to regulate insurance coverage terms, and second, by invoking its other preemption arguments. The first reply just begs the question; the second is irrelevant to the point of the hypothetical. The hypothetical illustrates the same point the Supreme Court made forcefully in *Ward*: the artificial distinction that MetLife draws between ERISA plan documents and insurance policies, which are linked together so closely, has no basis in either law or common sense.

2. "*Affects Risk Pooling Between the Insurer and the Insured*"

The second requirement a state law must meet to be deemed a law that "regulates insurance" is that it must "substantially affect the risk pooling arrangement between the insurer and the insured." *Miller*, 538 U.S. at 341–42. Section 2001.3 does so by altering "the scope of permissible bargains between insurers and insureds." *Id.* at 338–39. The Supreme Court has repeatedly upheld state laws that operate in this manner against ERISA preemption arguments.

In *Miller* the Supreme Court held that any-willing-provider laws substantially affect risk pooling by barring insureds from seeking "insurance from a closed network of health-care providers in exchange for a lower premium." *Id.* at 339. In *Ward* the Court held that a "notice-prejudice rule" was saved from preemption under ERISA as a state insurance regulation. See *id.* "The notice-prejudice rule governs whether or not an insurance company must cover claims submitted late, which dictates to the insurance company the conditions under which it must pay for the risk that it has assumed." *Id.* at 339 n.3. In this sense, § 2001.3 operates similarly to the laws upheld in *Miller* and *Ward*. By prohibiting discretionary clauses in insurance policies, it alters the scope of permissible bargains and dictates the conditions under which risk is assumed in the insurance market.

MetLife argues that § 2001.3 does not substantially affect risk pooling because it does not "determine whether a class of risks is covered, does not extend coverage to a class of previously excluded risks, and does not mandate new claim review procedures." The Supreme Court has applied a much broader, more practical standard to such questions. For example, the any-willing-provider laws considered in *Miller* also do not determine whether a class of risks is covered, extend coverage to a class of previously excluded risks, or mandate new claim review procedures. Yet those laws were also upheld by the Court because, like § 2001.3, they alter the scope of permissible bargains between insurers and insureds. 538 U.S. at 338–39. We are not persuaded by MetLife's attempt to narrow artificially the Supreme Court's interpretations of the requirement that state laws substantially affect risk pooling.

We join the Ninth and Sixth Circuits in concluding that a state law prohibiting discretionary clauses squarely satisfies this requirement. *Standard Ins. Co. v. Morrison*, 584 F.3d 837, 844–45 (9th Cir. 2009) ("Montana insureds may no longer agree to a discretionary clause in exchange for a more affordable premium. The scope of permissible bargains between insurers and insureds has thus narrowed. The Supreme Court has repeatedly upheld similar scope-narrowing regulations."); *American Council of Life Insurers v. Ross*, 558 F.3d 600, 607 (6th Cir. 2009) ("Prohibiting plan administrators from exercising discretionary authority in this manner dictates to the insurance company the conditions under which it must pay for the risk it has assumed.") (internal quotation marks and citation omitted).

B. *ERISA's Civil Enforcement Scheme*

MetLife has another preemption theory. Any "state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004). MetLife argues that § 2001.3 fits that description, but we disagree. Quite obviously, § 2001.3 does not duplicate, supplement, or supplant the ERISA civil enforcement remedy. All it does is restore in Illinois ERISA's own default rule of *de novo* review in court cases challenging denials of health and disability benefits. Section 2001.3 is not preempted by ERISA's civil enforcement scheme.

Fontaine sued MetLife to recover benefits due under the terms of an employee benefit plan, as ERISA authorizes. 29 U.S.C. § 1132(a)(1)(B). She sought *only* the benefits due to her under the plan. She did not seek, for example, tort damages

for negligent denial of her disability claim, or punitive damages under any theory, any of which would be preempted. See *Davila*, 542 U.S. at 205–06; *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987); see also *Morrison*, 584 F.3d at 846 (state laws prohibiting discretionary clauses are distinct from "state attempts to meld a new remedy to the ERISA framework"); *Ross*, 558 F.3d at 607 (prohibiting discretionary clauses does not "create, duplicate, supplant, or supplement any of the causes of action that may be alleged under ERISA").

*Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355 (2002), is the controlling case on this issue. In *Moran* the Supreme Court considered another state law regulating health maintenance organizations (HMOs). The law provided that when a patient sought care that her primary care physician said was medically necessary but that her HMO refused to cover, she was entitled to an independent medical review of her claim for coverage. If the independent medical reviewer found that the treatment fit the definition of medically necessary treatment in the patient's insurance plan, then the HMO was bound to cover the treatment. *Id.* at 359–61.

The independent review law conflicted with a discretionary clause in Moran's insurance policy. *Id.* at 359–60. The insurer argued that this state law conflicted with ERISA's civil enforcement scheme and was thus preempted. The Supreme Court disagreed, in reasoning that applies directly to § 2001.3:

> But this case addresses a state regulatory scheme that provides no new cause of action under state law and authorizes no new form of ultimate relief. While independent review …

may well settle the fate of a benefit claim under
a particular contract, the state statute does not
enlarge the claim beyond the benefits available
in any action brought under § 1132(a). And alt-
hough the reviewer's determination would
presumably replace that of the HMO as to
what is "medically necessary" under this con-
tract, the relief ultimately available would still
be what ERISA authorizes in a suit for benefits
under § 1132(a).

*Id.* at 379–80 (footnotes omitted). While "a deferential stand-
ard for reviewing benefit denials" is "highly prized by bene-
fit plans," it is not required by the "text of the statute." *Id.* at
384–85. ERISA requires only "a uniform judicial regime of
categories of relief and standards of primary conduct, not a
uniformly lenient regime of reviewing benefit determina-
tions." *Id.* at 385. And as noted, "the de novo standard of re-
view is already the default standard in ERISA cases, so it is
difficult to imagine how a state law requiring that level of
review would conflict with the statute." *Ross*, 558 F.3d at 608.

Faced with the rejection of its preemption argument in
*Moran*, *Morrison*, and *Ross*, MetLife points out that they were
decided before *Conkright v. Frommert*, 559 U.S. 506 (2010),
which MetLife calls a "monumental ERISA decision." Mon-
umental or not, the problem for MetLife is that *Conkright* is
not an ERISA *preemption* decision and offers little guidance
here.

*Conkright* explained "that an ERISA plan administrator
with discretionary authority to interpret a plan is entitled to
deference in exercising that discretion." 559 U.S. at 509, cit-
ing *Firestone*, 489 U.S. 101. *Conkright* then held that "a single

honest mistake in plan interpretation" does not justify "stripping the administrator of that deference for subsequent related interpretations of the plan." *Id.* MetLife points to the considerations that *Conkright* cited in favor of its holding— that deferential review of benefit determinations promotes "efficiency, predictability, and uniformity"—as establishing that ERISA entitles employers to the option of delegating discretionary authority in their benefit plans. See *id.* at 518.

"Because ERISA's text does not directly resolve" the standard of review courts should apply to benefit determinations, the Court had to decide this question in both *Firestone* and *Conkright*. See *id.* at 512. In *Firestone* the Court looked to trust-law principles for guidance, *id.*, and in *Conkright* the Court looked to some of the underlying purposes of ERISA after finding trust law unsettled on the precise question before it. *Id.* at 516–17.

Unlike *Firestone* and *Conkright*, this case does not call on the courts to decide in the first instance which standard of review should apply to a benefit denial. The State of Illinois has already answered that question as a matter of its state insurance law. *Conkright* dealt with a judicially created remedy for an insurer's error, not state legislation exercising the "historic police powers" of the states. See *Moran*, 536 U.S. at 365, quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995), quoting in turn *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230 (1947). Those powers are not "to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* ERISA is a quite detailed statute, yet Congress was completely silent on the standard of review for benefit determinations.

Preemption can of course be implied rather than express. But implied preemption analysis must be especially cautious when Congress has provided expressly for preemption. "Implied preemption analysis does not justify a 'freewheeling judicial inquiry into whether a state statute is in tension with federal objectives'; such an endeavor 'would undercut the principle that it is Congress rather than the courts that preempts state law.'" *Chamber of Commerce of United States v. Whiting*, 563 U.S. —, 131 S. Ct. 1968, 1985 (2011) (plurality opinion), quoting *Gade v. National Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 111 (1992) (Kennedy, J., concurring in part and concurring in judgment).

The objectives that *Conkright* cited in developing a standard of review for benefit determinations in the face of congressional and state silence—efficiency, predictability, and uniformity—were threatened at least as much, if not more so, by the state independent review law upheld in *Moran*. See *Morrison*, 584 F.3d at 848–49 (prohibiting deferential judicial review of benefit determinations is, in a way, "considerably more consistent with ERISA policy" than mandating independent medical reviews; "the ultimate decisionmaking entity—the federal district court—is the one foreseen by Congress and not a creature of state law"). Seeing no indication from the Supreme Court that *Conkright* overruled or limited *Moran*, and knowing that a "high threshold must be met if a state law is to be preempted for conflicting with the purposes of a federal Act," we hold that § 2001.3 is not impliedly preempted by ERISA's civil enforcement scheme. See *Whiting*, 131 S. Ct. at 1985 (plurality opinion), quoting *Gade*, 505 U.S. at 110 (Kennedy, J., concurring in part and concurring in judgment).

III. *The Scope of § 2001.3*

Up to this point, we have been assuming that § 2001.3 applies without showing why it does. MetLife offers four arguments that § 2001.3 should not apply to this case according to its terms. None has merit. Here again is the full text of § 2001.3:

> No policy, contract, certificate, endorsement, rider application or agreement offered or issued in this State, by a health carrier, to provide, deliver, arrange for, pay for or reimburse any of the costs of health care services or of a disability may contain a provision purporting to reserve discretion to the health carrier to interpret the terms of the contract, or to provide standards of interpretation or review that are inconsistent with the laws of this State.

50 Ill. Admin. Code § 2001.3.

MetLife's first argument is that the discretionary clause is contained in an ERISA plan document, not in an insurance document, and thus should be beyond the reach of § 2001.3 and of the Illinois Insurance Director more generally. The discussion of *UNUM Life Insurance Company v. Ward*, 526 U.S. 358, 376 (1999), and the ovarian cancer screening hypothetical above show that an artificial distinction between "plan" documents and "insurance" documents is not tenable. It "would virtually 'read the saving clause out of ERISA.'" *Ward*, 526 U.S. at 376, quoting *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 741 (1985). It would also nullify the evident purpose of § 2001.3.

MetLife's second argument is that § 2001.3 should not apply because Fontaine's disability insurance policy was offered not by MetLife—the only "health carrier" in the picture—but by the employer. Yet the first page of Fontaine's disability insurance policy states, "This policy is issued in return for the payment by the Policyholder of required Premiums," and it specifies the employer as the Policyholder. The page is printed on MetLife stationery and signed by MetLife's corporate officers. MetLife obviously issued Fontaine's disability insurance policy.

MetLife's third argument is that MetLife did not reserve discretionary authority to itself; rather, the employer delegated discretionary authority to MetLife. This similarly artificial distinction makes no difference under the terms of § 2001.3. The regulation prohibits any "provision purporting to reserve discretion to the health carrier." What matters is that the policy provision purports to reserve discretion, not who put the provision in the policy.

MetLife's final argument is that § 2001.3 does not prohibit all discretionary clauses but only clauses reserving discretion "to interpret the terms of the contract, or to provide standards of interpretation or review that are inconsistent with the laws of this State." MetLife claims that clauses reserving discretion to *make benefit determinations* are unaffected by § 2001.3. In *Firestone*, the Supreme Court rejected this artificial dichotomy between "benefit determinations" and "contract interpretation," pointing out that "the validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue." 489 U.S. at 115. MetLife does not grapple with this point, much less argue that this is an exceptional case where its benefit determina-

No. 14-1984                                                    17

tion did not "turn on the interpretation of terms in the plan at issue." *Id.*

The judgment of the district court is AFFIRMED.